UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

A.M., a minor by and                                                        PLAINTIFF
through her mother,
guardian, and next friend,
AUDREY MARTIN


v.                                                   CIVIL ACTION NO. 3:20-CV-560


JEFFERSON COUNTY BOARD                                              DEFENDANTS
OF EDUCATION, ET AL.

### <u>MEMORANDUM OPINION</u>

This matter is before the Court on multiple motions. Plaintiff Audrey Martin ("Martin")

has named as Defendants Jefferson County Board of Education ("JCBE," also "Jefferson County

Public Schools" or "JCPS"), Martin Pollio ("Pollio"), Tamara Oyler ("Oyler"), Carl Kling

("Kling"), Jason Neuss ("Neuss"), John Bunting ("Bunting"), Alissa Hebermehl ("Hebermehl"),

Tonkeyta Rodgers ("Rodgers"), and Carla Andrews ("Andrews"). Plaintiff has asserted two

federal claims against JCBE, one pursuant to 42 U.S.C. § 1983 ("§ 1983") and another pursuant

to 20 U.S.C. § 1681 ("Title IX"). Plaintiff has also asserted negligence claims under state law

against all individually named Defendants. *See* Second Amended Complaint, DN 33, PageID#

529-41.

Plaintiff has filed a motion for partial summary judgment pursuant to Fed. R. Civ. Pro. 56

on the Title IX claim against JCBE (DN 59), JCBE has responded (DN 70), and Plaintiff has

replied (DN 75). All Defendants except for Pollio have joined a motion for summary judgment

pursuant to Fed. R. Civ. Pro. 56 on all claims. DN 61. Thus, JCBE has sought summary judgment on the § 1983 and Title IX claims. Plaintiff has responded (DN 71) and JCBE replied (DN 74). We will address the outstanding motions pertaining to the federal claims against JCBE.

For the reasons stated below, the motion of Plaintiff for partial summary judgment on the Title IX claim will be denied and the motion of Defendants for summary judgment will be granted as to the federal claims against JCBE. All federal claims having been dismissed, the Court declines to exercise supplemental jurisdiction over the remaining claims (Causes of Action Against the Individual Defendants: Negligence, Negligence Per Se, and Related Theories).

## I.     Procedural Posture of Case

Plaintiff filed the original complaint in Jefferson Circuit Court on February 28, 2019, naming as defendants Andrews and Rodgers. DN 1-1, PageID# 5. A first amended complaint was filed in Jefferson Circuit Court on March 11, 2020, adding Kling, Neuss, Bunting, Hebermehl, and JCBE as defendants. DN 1-1, PageID# 90. After the addition of the federal law claims against JCBE, Defendants removed the case pursuant to this Court's federal question jurisdiction under 28 U.S.C. § 1331. DN 1, PageID# 1. Plaintiff filed a second amended complaint on April 21, 2021, adding Pollio and Oyler as defendants. DN 33.

## II.     Facts

### A.   A.M.

A.M. was a first-year student at Ballard High School ("Ballard"), a public school in Jefferson County, Kentucky, during the 2017-2018 school year. Prior to attending Ballard, A.M. attended JCPS schools for elementary and middle school. A.M. is cognitively impaired, and in third grade she was classified by JCPS as a student with a Mild Mental Disability. Depo. Audrey

2

Martin, DN 66-9, PageID# 1534. As such, A.M. was considered a student with "special needs" and, in accordance with federal and state law, JCPS developed an Individualized Education Program ("IEP") to accommodate her learning. Under Kentucky law, a student's IEP is reviewed at least once a year by an Admissions and Release Committee ("ARC"). As part of this review, the ARC evaluates the student's progress and needs, and assesses whether any changes need to be made to the student's IEP.

### B.  ARC Meetings and IEP Notes

The notes on A.M.'s final ARC evaluation from middle school, conducted in February 2017, included the following statement:

> [A.M.] is a very pretty girl. Frequently there are many boys interested in her. At times she does not know how to handle them when they touch her or stand so close to her. She has improved on being able to let an adult know when she needs help with other students in the cafeteria or on the bus. These difficulties greatly impact [A.M.'s] ability to be successful in the general education population.

A.M. IEP, DN 59-1, PageID# 974. A progress report issued early in A.M.'s freshman year at Ballard stated that she had goals of being able to "advocate for herself . . . when she is . . .concerned about her safety" and "report[ing] to a teacher when she feels uncomfortable on the bus or in a school setting." Progress Report, DN 59-2, PageID# 982.

### C.  Inappropriate Touching Recorded on February 9, 2018 ("Morning Harassment")

In early February 2018, another student reported to Counselor Hebermehl that A.M. was being touched inappropriately. Depo. Hebermehl, DN 66-3, PageID# 1421. On February 9, 2018, Hebermehl made the following entry in AM's Personal Learning Plan contact log ("PLP log"):

3

> Called mom to let her know that a boy has been touching A.M. on
> her butt and chest through her clothing. This is happening when she
> gets off the bus and he walks her to class. Mom is concerned about
> A.M.'s safety. The committee will convene in the next two weeks
> to talk about programming options and the possible need for special
> needs transportation.

PLP Log, DN 38-7, PageID# 674. This incident was reported to Assistant Principal Rodgers. Depo.

Rodgers, DN 66-1, PageID# 1335.

### D. *Alleged Rape on February 20, 2018*

Prior to any meeting taking place to discuss A.M.'s "programming options" and "possible

need for special needs transportation," A.M. alleges to have been raped on Ballard's property by

another special needs student. Depo. Gupton, DN 66-4, PageID# 1453. At around 7:15 am on

February 20, 2018, Teacher Terrie Gupton reports to have spotted A.M. and a male student, T.H.,

on the steps near the gym on the second floor of the school. *Id.*, PageID# 1452. Because students

were not allowed on the second floor prior to school starting for the day, Gupton instructed A.M.

and T.H. to go to the school office. *Id.* A.M. went to the office and Gupton met her there a few

minutes later. *Id.* Once in the office, A.M. informed Gupton that T.H. had raped her. *Id.*, PageID#

1453. Gupton told A.M. to remain in the office while she went to get Rodgers. *Id.*

When Rodgers arrived at the office, she questioned A.M. about what had happened, then

contacted Hebermehl. DN 66-1, PageID# 1344, 1348. Hebermehl told Rodgers to call the Crimes

Against Children Unit ("CACU") of the Louisville Metro Police Department, which she did. *Id.*,

PageID# 1348. CACU arrived at Ballard at about 10:45 am, by which time Martin had also been

contacted and arrived at the school. *Id.*, PageID# 1348-49.

After the alleged rape, A.M. missed several days of school before transferring to another

JCPS high school. DN 66-9, PageID# 1563.

4

### III.     Legal Standard for Summary Judgment

Summary judgment is appropriate when the moving party shows that, for each claim or defense on which judgment is sought, there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party may show the absence of any genuine issue of material fact by "demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Ford v. GMC*, 305 F.3d 545, 551 (6th Cir. 2002). A fact is "material" if its resolution might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that negate an essential element of the nonmoving party's claim. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. 317 at 322.

If the moving party makes this showing, "the burden . . . shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. DOT*, 53 F.3d 146, 150 (6th Cir. 1995). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *See Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Rather, to overcome a motion for summary judgment, the nonmoving party must produce "significant probative evidence." *See Moore*, 8 F.3d 335, 339-40 (citing *Anderson*, 477 U.S. at 249-50). The court must view the evidence in the light most favorable to the non-moving party and grant summary judgment only "if the record taken in its entirety could not convince a

rational trier of fact to return a verdict in favor of the nonmoving party." *Cox*, 53 F.3d 146, 150

(citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989)).

## IV.   Federal Law Claims[1]

### A.   *Liability Pursuant to § 1983*

Plaintiff seeks to impose liability on JCBE pursuant to 42 U.S.C. § 1983 ("§ 1983") for the

"violation of [A.M.'s] due process rights to personal security [and] to bodily integrity." DN 33,

PageID# 541-44. An individual can recover against the government under § 1983 if a person acting

"under the color of state law" causes the individual to be deprived of his or her rights "secured by

the Constitution and laws" of the United States. 42 U.S.C. § 1983; *Monell v. Department of Social

Servs.*, 436 U.S. 658, 691 (1978). Nonetheless, *Monell* does not allow recovery against a

municipality based only on traditional principles of *respondeat superior*. *Id.* As such, to impose

liability on a state entity for the acts of its employees, a plaintiff must not only "plead and prove"

that a state employee, "'through [his or her] own actions, . . . violated the Constitution,'" but also

---

[1] Although Defendants have broadly asserted "immunity" as an affirmative defense to "[s]ome or all of Plaintiff's claims" (Defs.' Answer, DN 36, Page ID# 560), such immunity cannot extend to the federal law claims against JCBE. Courts in this circuit have consistently held that the governmental immunity afforded to local school boards against state claims does not apply to Eleventh Amendment protection for claims brought under 42 U.S.C. § 1983. *See, e.g.*, *Green v. Nicholas Cnty. Sch. Dist.*, 756 F. Supp. 2d 828, 831 (E.D. Ky. 2010) (holding "that local school districts are political subdivisions that may not assert Eleventh Amendment immunity" in a 1983 claim); *Blackburn v. Floyd Cnty. Bd. of Educ.*, 749 F. Supp. 159, 163 (E.D. Ky. 1990) ("Kentucky local boards of education are not arms of the state and, thus, they are not entitled Eleventh Amendment immunity."). *See also Janes v. Bardstown City Sch. Bd. of Educ.*,1996 U.S. App. LEXIS 24997, at *14 (6th Cir. Sep. 20, 1996) (declining to decide on the issue of whether a Kentucky school board is entitled to government immunity, but acknowledging that "three different federal district judges in Kentucky have examined the Kentucky educational scheme and concluded that school boards are not entitled to Eleventh Amendment immunity as agencies of the state); *Jefferson Cnty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 836 (Ky. 2004) (recognizing that immunity provided to state entities under Kentucky law does not apply to federal claims brought under 42 U.S.C. § 1983); *Fayette County Bd. of Educ. v. Maner*, 2009 Ky. App. Unpub. LEXIS 234, *64 (Ct. App. May 22, 2009) ("[T]he issue of whether a local board of education is an arm of the state entitled to Eleventh Amendment immunity is to be decided by applying federal law. In apply[ing] federal law, the federal courts have concluded time after time that local school board[s] are not entities entitled to Eleventh Amendment immunity in §1983 cases.") (internal citations omitted). Likewise, state entities that receive federal funding cannot invoke Eleventh Amendment immunity to avoid liability under Title IX. *Doe v. Univ. of Ky.*, 2021 U.S. Dist. LEXIS 176491, at *5-*6 (E.D. Ky. Sep. 15, 2021) (citing *Franks v. Ky. Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir. 1998)).

show that the constitutional injury was carried out in furtherance of a government "policy" or "custom." *Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

The Sixth Circuit has recognized that, under *Monell*, a plaintiff can also recover for the *inaction* of a state entity if such inaction has led to a constitutional harm. In these circumstances, a plaintiff must put forth evidence that a state's repeated failure to act "in the face of . . . habitually unconstitutional conduct" was so prevalent that it created a "custom" or "policy" of inaction within the state entity. *See D'Ambrosio v. Marino*, 747 F.3d 378, 387-88 (6th Cir. 2014) (discussing plaintiff's attempt to show that "county prosecutors habitually ignored criminal defendants' constitutional rights in a manner that was so persistent and widespread as to practically have the force of law") (internal citation and quotation marks omitted). Similarly, a state entity can be liable under § 1983 for constitutional injuries resulting from a "failure to provide proper training" to its employees if the alleged failure is so persistent that it "can justifiably be said to represent a policy for which the [entity] is responsible." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

### 1. *Alleged Constitutional Harm*

In the second amended complaint, Plaintiff makes various claims attempting to hold JCBE liable under *Monell* for conduct allegedly carried out in furtherance of JCBE policy or custom. For example, Plaintiff alleges:

> The policies or customs of JCPS (and its employees, agents, or servants), including but not limited to what to do when employees are aware that a student is not being watched or supervised closely enough, and what to do to protect its students from dangerous sexual predators like T.H., was the moving force behind the rape of A.M.

DN 33, PageID# 542. Plaintiff also claims that JCBE is liable for its alleged inaction (*Id.*, paragraph 217) and failure to "appropriately train" (*Id.*, paragraph 214).

7

However, regardless of the theory under which liability is imposed, recovery under *Monell* is not possible without first showing that a state actor perpetrated a constitutional harm against the plaintiff. In the present case, Plaintiff alleges that "A.M. suffered a constitutional harm . . . when she was raped by T.H." DN 33, PageID# 542. While the Court agrees that if A.M. was raped by T.H. she was deprived of a fundamental right,[2] a state entity is generally not required "to protect the life, liberty, and property of its citizens against invasion by private actors." *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Because A.M. does not allege to have suffered a constitutional harm at the hands of a JCBE employee, any possibility of Plaintiff recovering against JCBE for the actions of T.H. would seem to be foreclosed under the principles of *Monell*.

### 2. *State-Created-Danger Theory of Harm*

In limited situations, a plaintiff may be able to recover against the state even if a private actor, not the state, injured the plaintiff's constitutional rights. In the Sixth Circuit, a plaintiff may recover on these grounds if the plaintiff shows that the state "create[d] a perilous situation that render[ed] [the plaintiff] more vulnerable to" the harm inflicted by the private actor. *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728 (6th Cir. 2005). To substantiate a claim under this "state-created-danger" theory, the plaintiff must show:

> (1) an affirmative act by the state that either created or increased the risk that the plaintiff would be exposed to private acts of violence; (2) a special danger to the plaintiff created by state action, as distinguished from a risk that affects the public at large; (3) the requisite state culpability to establish a substantive due process violation, which has been described as requiring deliberate indifference by the government entity when the entity had time to deliberate on what to do.

---

[2] *See Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (holding that public schoolchildren have "a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity [and] that such right is fundamental").

*Id. See also Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 932-36 (6th Cir. 2020) (applying the state-created-danger framework to a case in which a local school board was sued for sexual assault committed by one student against another while on a school bus).

According to Plaintiff, JCBE "is subject to liability under the state-created danger theory because it took affirmative acts which either created or increased the risk that A.M. would be exposed to a private act of violence committed by T.H." DN 33, PageID# 543. Specifically, Plaintiff alleges:

> JCPS (and its employees, agents, or servants) took multiple affirmative acts that created or increased this risk (including but not limited to placing T.H. into Ballard High School, claiming to put a plan into place to provide for additional supervision of A.M. after the October incidents but then failing to do so, scheduling a meeting far in the future after A.M. was sexually assaulted or harassed 11 days before the rape, and discussions with A.M.'s family regarding supervision plans).

DN 33, PageID# 543.

The Court first notes that "broad-brush statements against [JCPS and its employees, agents, or servants] collectively . . . [w]ill not do." *Jackson Local*, 954 F.3d at 934. Rather, to impose liability on JCBE, Plaintiff "must show that each employee knew of a risk that [T.H.] would sexually assault [A.M.] and responded to that risk in a way that society would find 'conscience shocking.'" *Id.* In the response brief to JCBE's motion for summary judgment, Plaintiff attempts to make such a showing by focusing on two specific acts carried out by JCBE employees. First, Plaintiff contends that JCBE is liable for Hebermehl's alleged role in T.H.'s readmission into Ballard "despite his documented significant history of in-school sexual misconduct, and his

9

criminal history." DN 71, PageID# 3479. Second, Plaintiff points to Rodgers' failure "to have someone walk A.M. from the bus to class after the October 2017 incidents." *Id.*

Regarding T.H.'s readmission, Plaintiff has not identified any specific "affirmative act" taken by Hebermehl that resulted in T.H. being allowed to attend Ballard. In fact, throughout most of the briefing and in the pleadings, Plaintiff argues that Hebermehl was negligent for her failure to conduct an ARC meeting to consider whether T.H. should be admitted to Ballard. *See, e.g.*, DN 27, PageID# 442; DN 33, PageID# 533; DN 71, PageID# 3469. Therefore, if the evidence in the record supports any claim, it is that Hebermehl failed to act with respect to T.H.'s admission. The Sixth Circuit has held that "failure to act is not an affirmative act under the state-created danger theory." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

Turning to Rodgers' failure to follow through on her alleged promise to have A.M. escorted in the mornings, this also cannot serve as the basis for a state-created-danger claim. First, for reasons already discussed, a failure to act does not constitute an affirmative act. Additionally, "[t]he act of returning someone to the same dangers that existed status quo ante does not satisfy the state-action requirement." *Jones v. Reynolds*, 438 F.3d 685, 693 (6th Cir. 2006). By not walking A.M. to class, Rodgers would not have put A.M. in any danger that did not already exist. Thus, Plaintiff has failed to offer evidence of a genuine issue of material fact as to whether Rodgers engaged in an affirmative act that led to a state-created-danger.

Plaintiff cannot recover from JCBE without first establishing "liability on the part of its officials." *See McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 471 (6th Cir. 2006) ("the conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well") (quoting *Bukowski v. City of Akron*, 326 F.3d 702, 712-13 (6th Cir. 2003) (internal quotation marks omitted). As discussed above, Plaintiff has not produced any

evidence of an affirmative employee action that led to a under a state-created-danger. Hence, Plaintiff's attempt to hold JCBE accountable on this basis fails.

### 3. *Failure to Train*

Finally, Plaintiff alleges that JCBE is liable under § 1983 for its failure "to appropriately train its employees regarding, among other things, what to do when employees are aware that a student is not being watched or supervised closely enough, and what to do to protect its students from dangerous sexual predators like T.H." DN 33, PageID# 542. As evidence of "JCBE's systemic failure to train," Plaintiff points to Rodgers' purported lack of knowledge regarding how to respond to allegations of sexual misconduct. DN 71, PageID# 3480-81. Plaintiff relies on Rodgers' deposition, in which she indicated that she was "unaware of any JCBE Policy regarding how to respond to a student's allegations of rape," and on her alleged failure to produce any records during discovery showing that she was trained in "performing investigations or taking remedial action regarding complaints of sexual harassment." *Id.* (citing to DN 66-1, PageID# 1349; DN 71-21, PageID# 3710).

In the Sixth Circuit, to prevail on a "failure to train" claim a plaintiff must show: "(1) the training . . . was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). A showing of "deliberate indifference" "requires proof that the defendants 'disregarded a known or obvious consequence' of their actions." *Thorpe v. Breathitt Cnty. Bd. of Educ.*, 8 F. Supp. 3d 932, 941 (E.D. Ky. 2014) (quoting *Sagan v. Sumner Cnty. Bd of Educ.*, 726 F. Supp. 2d 868, 886 (M.D. Tenn. 2010)). Thus,

11

Plaintiff must show that JCBE "was aware of the unconstitutional acts of its employees and failed to respond." *Id.*

As already discussed, Plaintiff has not identified an unconstitutional act for which JCBE could be held liable under § 1983. The alleged harm against A.M. was committed by a private actor and Plaintiff has not provided evidence that JCBE can be held liable under a state-created-danger theory. As such, even taking the evidence in the light most favorable to Plaintiff, there is no act or omission committed by a JCBE employee on which to base Plaintiff's claim of inadequate training.

Assuming arguendo that Plaintiff established a state-perpetrated constitutional injury against A.M., Plaintiff has not provided evidence that such an injury was the result of a JCBE "policy" or "custom" of "inadequate training." Plaintiff only offers evidence that one JCBE employee—Rodgers—was possibly inadequately trained.  Even if true, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [state]." *City of Canton*, 489 U.S. at 391. As such, Plaintiff has not properly substantiated the claim that JCBE is liable under § 1983 for failure to train its employees.

For the reasons discussed above, Plaintiff has not demonstrated that, for any claim against JCBE pursuant to 42 U.S.C. § 1983, there exists a conflict of material fact to be resolved by a jury. JCBE is thus entitled to judgment as a matter of law on these claims.

**B.  *Private Action Under Title IX***

Plaintiff also alleges that JCBE is liable to A.M. under Title IX of the Education Amendments of 1972 ("Title IX"), which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20

U.S.C. § 1681. In limited circumstances, an individual can recover under Title IX in a private cause of action against the recipients of federal funds. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639-40 (1999) (stating that "private damages actions [under Title IX] are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue). While under Title IX a recipient of federal funds is only "liable in damages . . . for its own misconduct," the Court has held that a recipient's deliberate indifference "to known acts of harassment," including instances of "student-on-student" sexual harassment, can constitute actionable misconduct. *Id.*at 640, 643. In such cases, liability will only be imposed if the recipient is "'deliberately indifferent to sexual harassment, of which [it] has actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Id.* at 650.

### 1. *Allegations Against JCBE*

In the second amended complaint, Plaintiff alleges that JCBE is liable under Title IX because "A.M. suffered harassment so severe as to deprive her of access to educational opportunities or benefits, [JCBE] had actual knowledge of the harassment, and [JCBE] was deliberately indifferent to the harassment." DN 33, PageID# 544-45. According to Plaintiff, "[JCBE] had actual notice of facts that indicated the likelihood of sexual discrimination/assault to A.M. . . . and that T.H. posed a substantial risk of abuse to students" and "[JCBE] had sufficient and reasonable authority to take corrective action and/or remedial measures to prevent A.M. from being raped." *Id.*, PageID# 545. Plaintiff maintains that JCBE "was deliberately indifferent and clearly unreasonable in light of the known circumstances": 1. in its response "to T.H.'s past instances of sexual misconduct and rape/sexual assault," "to A.M. being sexually assaulted/harassed on or about February 9, 2018," and "to the fact that A.M. was not being

13

watched/supervised closely enough for 4 months"; and 2. "because it failed to promptly and appropriately investigate the rape and/or the February 9, 2018 incident to determine what occurred, as required by the law and the Department of Education." *Id.*, PageID# 545-46.

In the briefing, Plaintiff argues that Hebermehl and Rodgers "had actual knowledge" of A.M. being sexually harassed prior to the alleged rape on February 20, 2018 and "knew A.M. needed to be supervised more closely before the rape." DN 59, PageID# 962, 964. Plaintiff maintains that both Hebermehl and Rodgers had "the ability to take corrective action," but "failed to take any action whatsoever to remedy the harassment of A.M. after the February 9th" incident. *Id.*, PageID# 965. Plaintiff argues, but does not allege, that JCBE's conduct rose to the level of deliberate indifference because "it failed to take any action whatsoever to remedy the harassment of A.M. after the February 9th documentation, and blatantly violated numerous Title IX requirements." DN 59, PageID# 965.

JCBE does not dispute that Hebermehl and Rodgers were persons with "the ability to take corrective action," but challenges Plaintiff's allegations regarding the level of knowledge they each possessed, as well as the claim that they failed to take any corrective action when faced with actual knowledge. DN 70, PageID# 3278-84. JCBE also maintains that Plaintiff has failed to show that it acted with deliberate indifference. *Id.*, PageID# 3280-84.

### 2. *Sixth Circuit Jurisprudence*

The Sixth Circuit has defined "sexual harassment" to consist of "some type of aggressive and antagonistic behavior that, from the victim's perspective, is uninvited, unwanted, and non-consensual." *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 620 (6th Cir. 2019). The court described the test for liability in cases of student-on-student sexual harassment as consisting of two "separate-but-related torts by separate-and-unrelated tortfeasors: (1) 'actionable

harassment' by a student; and (2) a deliberate-indifference intentional tort by the school." *Id.* at 619-20. (citing *Davis*, 526 U.S. at 643, 651-52).

### a. *Actionable Harassment*

For a claim of student-on-student sexual harassment to be "actionable" via a private claim under Title IX, the harassment "must be (a) severe, (b) pervasive, and (c) objectively offensive." *Id.* (citing *Davis* at 651). According to the Sixth Circuit, "one incident . . . is not enough" to demonstrate "pervasive" harassment. *Id.* at 620. Rather, to state a claim, a plaintiff must show that, after the recipient has knowledge of and responds (or fails to respond) to an initial incident of harassment evidence, there was "at least one more (further) incident of harassment." *Id.* at 621. "[T]he further harassment must be inflicted against the same victim, the plaintiff 'cannot . . . premise the [further harassment] element of her Title IX claim on conduct [by the perpetrator] directed at third parties.'"[3] *Id.* at 621-22.

### b. *Deliberate Indifference*

"[A] Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference.'" *Stiles v. Grainger Cnty.*, 819 F.3d 834, 849 (6th Cir. 2016). The plaintiff must "plead and prove" that the administrator "had 'actual knowledge' of an incident of actionable sexual harassment" and the administrator's response was "'clearly unreasonable in light of the known circumstances.'" *Kollaritsch*, 944 F.3d at 622 (quoting *Davis* at 648). This requirement of showing an administrator's "deliberate indifference . . . sets a high bar for plaintiffs to recover under Title IX." *Stiles v. Grainger Cnty.*, 819 F.3d 834, 848 (6th Cir. 2016) (citing *Doe v. Galster*,

---

[3] This disposes of Plaintiff's Title IX claims based on JCBE's alleged knowledge of T.H.'s prior history of incidents involving other victims.

768 F.3d 611, 619 (7th Cir. 2014)). Liability is only imposed in such cases "when the school officials are aware of the misconduct but do nothing to stop it, despite its ability to exercise control over the situation." *Horner ex rel. Horner v. Ky. High Sch. Ath. Ass'n*, 206 F.3d 685, 692 (6th Cir. 2000). The standard for deliberate indifference "is not a mere 'reasonableness' standard," and "there is no reason why courts ... [can]not identify a response as not 'clearly unreasonable' as a matter of law." *M.D. v. Bowling Green Indep. Sch. Dist.*, 115CV00014GNSHBB, 2017 WL 390280, at *5 (W.D. Ky. Jan. 27, 2017), aff'd sub nom. M.D. by and through *Deweese v. Bowling Green Indep. Sch. Dist.*, 709 Fed. Appx. 775 (6th Cir. 2017) (unpublished) (citing *Davis*, 526 U.S. at 649).

After making this showing, the plaintiff must also evidence that the administrator's conduct was the cause of a second incident of actionable sexual harassment, "which would not have happened but for the clear unreasonableness of the school's response." *Kollaritsch*, 944 F.3d at 622 (citing *Davis*, 526 U.S at 644). Thus, the plaintiff must show that the administrator's response, "at a minimum, cause[d] [the plaintiff] to undergo harassment or ma[de] [the plaintiff] liable or vulnerable to it." *Id.* (quoting *Davis* at 645) (internal citation and quotation marks omitted). A plaintiff can recover damages in these cases only by showing that he or she was deprived of "'access to the educational opportunities or benefits provided by the school.'" *Id.* (quoting *Davis* at 650).

### 3. *Application to Case at Bar*

In accordance with the jurisprudence outlined above, to prevail on the private action Title IX claim against JCBE, Plaintiff must establish that 1. a JCBE administrator had actual knowledge of at least one "initial" incident of actionable sexual harassment against A.M., 2. the administrator responded with deliberate indifference, 3. this indifference was the cause of a second "further"

incident of harassment, and 4. the further incident resulted in a A.M. being deprived of "access to the educational opportunities or benefits provided by" JCBE.

### a. Alleged "Initial" Incidents of Harassment

#### Alleged 2017 Harassment

Plaintiff claims that the notes on A.M.'s IEP in February 2017 (DN 59-1, PageID# 974) and the progress report from September 2017 (DN 59-2, PageID# 982) evidence that in 2017 A.M. was experiencing "ongoing sexual harassment" at school or on the bus. DN 59, PageID# 949, 960. Plaintiff's expert testified that these records show that A.M. was "essentially being sexually harassed." DN 68-8, PageID# 1996. JCBE contends that neither of these documents support Plaintiff's claim because neither document mentions sexual harassment. DN 70, PageID# 3269.

Insofar as the notes on the IEP and progress report suggest that A.M. was subjected to "uninvited, unwanted, and non-consensual" conduct that was "objectively offensive"—an inference that is not warranted from the information on the face of the documents—Plaintiff fails to show that a JCBE "administrator with authority to take corrective action" had actual knowledge of such conduct. Thus, Plaintiff cannot demonstrate "pervasive" harassment based on an "initial" act of harassment in 2017.

#### Morning Harassment in Early February 2018

All parties agree that on February 9, 2018 Hebermehl recorded an entry into A.M's PLP log indicating that A.M. had been subjected to inappropriate sexual touching by a boy at school and that "[t]his is happening when she gets off the bus and he walks her to class." DN 38-7, PageID# 674. The parties also do not dispute that Hebermehl made the entry into A.M.'s PLP log after a student reported the inappropriate touching to Hebermehl in early February. *See* DN 66-3, PageID# 1422 (Hebermehl testifying that she would have made the entry within twenty-four hours

17

after learning of the harassment). However, the meaning of the log entry as well as the details of the incident are in dispute. Plaintiff argues that the wording of the entry ("this is happening when…") suggests the "Morning Harassment," consisted not of one incident, but of multiple incidents of inappropriate touching in the mornings prior to Hebermehl's log entry. DN 59, PageID# 950. JCBE maintains that Plaintiff has not shown that Hebermehl or Rodgers had actual knowledge of any harassment against A.M. prior to the student's report to Hebermehl in early February 2018. DN 70, PageID# 3280. As such, JCBE contends that Plaintiff cannot evidence that JCBE acted with deliberate indifference in response to an event of harassment once an administrator had actual knowledge. *Id.*, PageID# 3282.

To the extent that Plaintiff has urged that A.M. was subjected to multiple incidents of touching in the morning, it is ultimately immaterial to Plaintiff's claim. Hebermehl made the PLP log entry on February 9 after learning of the Morning Harassment from a student. DN 66-3, PageID# 1421-22. The harassment was then reported to Rodgers. DN 66-1, PageID# 1335. Accordingly, for purposes of this analysis, Hebermehl and Rodgers acquired "actual knowledge" of the Morning Harassment from the student's report and, as such, this report put JCBE on notice of an "initial incident" of harassment.[4]

Having established that the Morning Harassment documented on February 9, 2018 and the subsequent alleged rape on February 20, 2018 both constituted instances of A.M. being subjected to harassment that was "severe" and "objectively offensive," Plaintiff has evidenced an "initial" and "further" incident of harassment. The parties agree that both Hebermehl and Rodgers had "actual knowledge" of the two incidents and, therefore, Plaintiff has demonstrated "actionable"

---

[4] Plaintiff surmises that there may have been more than one incident reported. This point does not strengthen Plaintiff's case, as Hebermehl and Rodgers can only be held accountable, if at all, for their conduct after having "actual notice" which, it is undisputed, occurred in early February.

harassment for the purposes of Title IX. The parties also do not dispute that the second incident, the alleged rape, resulted in a cognizable injury to A.M. Therefore, to prevail on the Title IX claim, Plaintiff must show that Hebermehl or Rodgers acted with deliberate indifference in response to their actual knowledge of the Morning Harassment and that this deliberate indifference led to or made A.M. more vulnerable to the alleged rape.

### b. *Alleged Deliberate Indifference*

Plaintiff maintains that "JCBE was deliberately indifferent because it failed to take any action whatsoever to remedy the harassment of A.M. after the February 9th documentation." DN 59, PageID# 965. This purported deliberate indifference must be evidenced by showing that JCBE employees with actual knowledge of the Morning Harassment documented on February 9 responded in a way that was "clearly unreasonable." According to Plaintiff, despite knowing "as of February 9th that A.M. was not being supervised closely enough in the mornings . . . and . . . that A.M. was sexually harassed on multiple occasions," Hebermehl "did nothing to prevent the harassment from happening again." DN 59, PageID# 966. Plaintiff also claims that Rodgers "knew both that A.M. was . . . sexually harassed on multiple occasions as documented on February 9th, and that A.M. was not being appropriately supervised in the mornings as of February 9th," "[y]et she too did nothing to get A.M. supervised more closely." DN 59, PageID# 967.

<u>Hebermehl's Conduct After Knowledge of Morning Harassment</u>

Despite Plaintiff's claim that Hebermehl did "nothing" in response to learning of the Morning Harassment, the record shows that Hebermehl spoke to A.M.'s mother and that she planned to hold an ARC meeting within two weeks of February 9. DN 38-7, PageID# 674. In addition, Rodgers testified that "someone" informed her of the Morning Harassment. DN 66-1, PageID# 1335. As Plaintiff has not evidenced that any other individual besides Hebermehl had

knowledge of the Morning Harassment, it is appropriate to infer that the information was communicated to Rodgers, either directly or indirectly, from Hebermehl. It is, thus, inaccurate to describe Hebermehl's response to the Morning Harassment as "doing nothing."

Plaintiff's challenge really rests on the adequacy of Hebermehl's response. First, Plaintiff states that, after learning of the Morning Harassment, Hebermehl needed to "do something to get A.M. supervised more closely," even suggesting that she should have had someone walk A.M. from the bus to class in the mornings. DN 59, PageID# 964. As stated by the Supreme Court, victims of harassment do not have a right under Title IX "to make particular remedial demands." *Davis*, 526 U.S. at 648. Rather than assessing what would have been the best response under the circumstances, a court must assess whether the actions that were taken were "clearly unreasonable." *K.C. v. Cnty. Schs*, 306 F. Supp. 3d 970, 983 (W.D. Ky. 2018) ("[T]he Sixth Circuit has explained that, even in situations in which, '[i]n hindsight, the school district could certainly have done more, 'this is not the standard by which we impose liability.'") (quoting *McCoy v. Bd. of Educ.*, 515 F. App'x 387, 392 (6th Cir. 2013)).

Even if closer, more personal supervision of A.M. in the mornings, such as walking A.M. from the bus to class, would have been the "best" response and prevented the events of February 20, it does not follow that any other response was clearly unreasonable. Here, Plaintiff does not specify why Hebermehl's conduct in response to her actual knowledge of the Morning Harassment was clearly unreasonable. Hebermehl's actions led to Rodgers' suspension of the student who harassed A.M. in the morning. Thus, Hebermehl had reason to believe that the harassment was sufficiently addressed for the time being and she was planning to hold an ARC committee meeting in the near future "to talk about programming options and the possible need for special needs

20

transportation" for A.M. DN 38-7, PageID# 674. Plaintiff has not evidenced that Hebermehl acted with deliberate indifference.

*Rodgers' Conduct After Knowledge of Morning Harassment*

As with Hebermehl, Plaintiff argues that Rodgers needed to "to get A.M. supervised more closely" and also claims that she "promised" to have someone walk A.M. from the bus to class in the mornings. DN 59, PageID# 964; DN 75, PageID# 3855. For all the reasons discussed above, recovery based on these arguments is foreclosed.[5] Plaintiff attempts to show that the disciplinary action taken by Rodgers was "clearly unreasonable" under two additional, alternative theories. The Court also rejects the arguments made under these theories, as explained below.

*Alleged Afternoon Harassment*

First, Plaintiff claims that Rodgers did not take any disciplinary action against the student who perpetrated the Morning Harassment. According to Plaintiff, in addition to the Morning Harassment, A.M. was subjected to similar harassment on one occasion in the afternoon ("Afternoon Harassment"). DN 59, PageID# 950-51. Plaintiff relies exclusively on a "Behavior Detail Report" indicating that Rodgers suspended a student for six days for "several inappropriate sexual acts in the stairwell with another student." Behavior Detail Report, DN 59-4, PageID# 984. The "time stamp" recorded on the Behavior Detail Report is "1:00 pm," which Plaintiff asserts is evidence that A.M. was harassed in the afternoon, an event "completely unrelated to" the Morning Harassment. DN 59, PageID# 950.

Plaintiff claims that the inconsistency of the time recorded on the Behavior Detail Report (1:00 pm) and the known time of the Morning Harassment (just before the start of school) is

---

[5] Even assuming Rodgers made such a promise and failed to follow through, this does not show that her conduct was "clearly unreasonable." Under Title IX a plaintiff is not entitled to assert one remedial action as "reasonable" and maintain that all others are "clearly unreasonable."

evidence that there at least a genuine issue of material fact as to whether disciplinary action was taken in response to the Morning Harassment. *Id.*, PageID# 950-51. JCBE contends that the Behavior Detail Report documents the disciplinary action taken against the student who perpetrated the Morning Harassment, maintaining that "the time stamp Plaintiff relies on to support the incident occurring in the afternoon denotes when . . . Rodgers made the entry into the student's Behavior Detail Report, not the time when the incident occurred." DN 70, PageID# 3271. In other words, according to JCBE, the boy who touched A.M. in the morning was disciplined for that behavior in the afternoon.

The Court first notes that the Behavior Detail Report indicates only that a student was suspended for sexual misconduct and nothing on the face of the document suggests that such misconduct was directed at A.M. However, Rodgers concedes that the Behavior Detail Report documents a disciplinary action taken against a male student for touching A.M. DN 70, PageID# 3271. The discrepancy between the time of the Morning Harassment and the time noted on the Behavior Detail Report (1:00 pm) evidences an issue of fact as to whether the Behavior Detail Report documents Rodgers' discipline of a student for the Morning Harassment or Rodgers' discipline of a student for some separate incident of touching that took place in the afternoon. It follows, then, that there is an issue of fact as to whether Rodgers had actual knowledge of an event of Afternoon Harassment.

In the end, however, this question is immaterial to Plaintiff's claim. Even assuming the Behavior Detail Report documents disciplinary action taken for an incident that occurred in the afternoon, Plaintiff cannot establish that Rodgers acted with deliberate indifference. Rodgers testified that she disciplined the boy reported to have touched A.M. in the mornings. DN 66-1, PageID# 1336. Plaintiff's theory does not negate Rodgers' testimony. At best, Plaintiff has

evidenced that the Behavior Detail Report might document that a student was disciplined by Rodgers for an incident other than the Morning Harassment. It does not show that the student who committed the Morning Harassment was not disciplined by Rodgers. Plaintiff's claim of deliberate indifference is, therefore, not furthered by this theory.

*Alleged Multiple Perpetrators of Morning Harassment*

In the alternative, Plaintiff argues that, even if the Behavior Detail Report does evidence that a student was disciplined for the Morning Harassment, there were actually two boys who perpetrated the Morning Harassment against A.M. and, thus, JCBE was deliberately indifferent for allowing one of those boys to go unpunished. DN 75, PageID# 3853. As evidence, Plaintiff offers the testimony of A.M.'s mother, Martin, who claims that "about two weeks" before the alleged rape, "[a] school employee called [her] . . . and explained that 'two boys . . . cornered A.M. and they tried to pull her panties down and . . . [they were] touching on her.'" DN 66-9, PageID# 1545. Martin identified Rodgers as the "school employee" who called her with this information. *Id.* According to Martin, Rodgers told her that this incident took place in the hallway near a classroom, but Martin did not recall the time of day it was alleged to have occurred. *Id.*

JCBE maintains that, besides Martin's testimony, "no evidence has ever been produced to support [the alleged incident that took place in the hallway] and none of the Defendants had ever heard about such an allegation." DN 70, PageID# 3270. Rodgers testified that, while she remembered talking to Martin about an instance of inappropriate touching, she did not recall discussing the incident Martin described. DN 66-1, PageID# 1336.

Plaintiff's claim that two male perpetrators were involved in the Morning Harassment runs contrary to Hebermehl's PLP log entry which states that that "a boy" was touching A.M. in the morning. DN 38-7, PageID# 674. The claim also contradicts Rodgers testimony that one boy was

reported to have been touching A.M. when she got off the bus and walked to class in the morning. *See* DN 66-1, PageID# 1335 (attempting to recall the boy's name).[6] The evidence that Plaintiff offers, Martin's testimony, is insufficiently specific regarding the time of day of the alleged incident involving two boys for one to infer that such an incident, if it occurred, took place in the morning. Moreover, even supposing that two boys were involved in the Morning Harassment, the Behavior Detail Report evidences that one of the boys was disciplined—it is not evidence that a second boy was *not* disciplined. Thus, Plaintiff has not offered evidence that a genuine issue of material fact exists as to whether there were multiple perpetrators of the Morning Harassment, that Rodgers had such knowledge, or that JCBE acted with deliberate indifference.

*Alleged Title IX Violations*

Finally, Plaintiff recites a litany of Title IX violations allegedly committed by JCBE that Plaintiff purports evidence JCBE's deliberate indifference. DN 59, PageID# 953-59, 968-71. Whether JCBE's conduct was noncompliant with one or more Title IX administrative requirements is irrelevant to the deliberate indifference analysis of a private claim brought under Title IX. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291-92 (1998) (stating that, while the Department of Education can enforce regulatory requirements administratively, "[w]e have never held . . . that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements" and such violations do not "establish the requisite actual notice and deliberate indifference" of a private Title IX claim).[7]

---

[6] During deposition, Hebermehl also confirmed that "in early February 2018, A.M. was touched by a boy . . . in between the time she got off the bus and the time first class started." DN 66-3, PageID# 1420-21.

[7] *See also E.M.J. v. Garrard Cnty. Bd. of Educ.*, 413 F. Supp. 3d 598, 615 n.19 (E.D. Ky. 2019) ("Plaintiff's (uncorroborated) allegations of regulatory violations do not constitute deliberate indifference.") (citing *Gebser* at 292); *M.D. v. Bowling Green Indep. Sch. Dist.*, No. 1:15-CV-00014-GNS-HBB, 2017 U.S. Dist. LEXIS 11504, at *18 n.3 (W.D. Ky. Jan. 27, 2017) ("[T]he Supreme Court has held that a funding recipient's failure to comply with the regulation 'does not establish the requisite actual notice and deliberate indifference for a private right of action.'") (quoting *Ross v. Corp. of Mercer Univ.*, 506 F. Supp. 2d 1325, 1353 (M.D. Ga. 2007)).

The Court acknowledges that conduct that violates Title IX administrative regulations might, coincidentally, also evidence a "clearly unreasonable" response to known allegations of sexual harassment and has reviewed the cases cited by Plaintiff in which a federal court's fact-based deliberate indifference analysis in a private Title IX claim included an assessment of conduct that could have constituted an administrative Title IX violation.[8,9] The Court finds that the facts of these cases are insufficiently analogous to the case at bar to be persuasive. Unlike the cases Plaintiff cites, JCBE had actual knowledge of a single complaint of sexual harassment and promptly responded by disciplining the student responsible. To that degree that JCBE did not comply with Title IX regulatory requirements, such noncompliance does not render JCBE's otherwise "reasonable" response "clearly unreasonable."

In sum, JCBE has established that it took timely and reasonable measures to end any known instances of harassment and Plaintiff has not evidenced that a genuine issue of material fact exists as to whether JCBE acted with deliberate indifference. Accordingly, the Court concludes that Plaintiff has failed to establish a required element of a private cause of action under Title IX and JCBE is entitled to judgment on this claim as a matter of law.

---

[8] *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 690 (4th Cir. 2018) (finding deliberate indifference, in part, because the defendant university "made no real effort to investigate or end [ongoing] harassment" despite multiple complaints over many months); *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 30 (D.D.C. 2018) (holding that plaintiff's claim alleging that the defendant university "waited almost ten months before holding a disciplinary hearing and issuing a decision on her charge that" she was sexually assaulted was sufficient to survive a motion to dismiss on the issue of deliberate indifference); *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1248 (10th Cir. 1999) (stating that a principal's "refusal to investigate known claims" of sexual harassment constituted deliberate indifference); *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 64 (D. Me. 1999) (stating that there was a genuine issue of material fact as to whether a school's failure to "question a single student" about multiple allegations of sexual misconduct constituted deliberate indifference).

[9] Plaintiff asserts that *Doe v. Forest Hills School District*, No. 1:13-cv-428, 2015 U.S. Dist. LEXIS 175321, at *55 (W.D. Mich. Mar. 31, 2015) stands for "the proposition that 'failing to train a school principal on how to investigate sexual assault allegations constitutes deliberate indifference'" in the context of a private Title IX action. DN 59, PageID# 969-70 (quoting *Forest Hills Sch. Dist.* at *55). However, the court in this case stated that, regarding a § 1983 claim, the defendant school district's failure to train any of its employees "about how to respond to sexual assault complaints" constituted deliberate indifference, as the failure rose to the level of a district policy or custom and was closely related to the plaintiff's injury. *Forest Hills Sch. Dist.* at *54-*55. Although the court noted that such training was a regulatory requirement under Title IX, the court did not cite the school's failure to train in its deliberate indifference analysis of the plaintiff's Title IX claim. *See id.* at *27-*36.

V.      **State Law Claims**

Finally, Plaintiff alleges a number of claims arising under Kentucky law and implicating the availability of state law immunities. Pursuant to 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having concluded that all federal claims over which the Court has original jurisdiction must be dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *Id. See United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 726 (1966). The Court will, therefore, remand Plaintiff's state law claims to the state court from which the action was removed.

January 24, 2022

**Charles R. Simpson III, Senior Judge**
**United States District Court**